UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMIE S.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

CASE NO. 3:23-CV-5413-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to properly consider the medical opinion evidence. Had the ALJ properly considered the evidence, he may have included additional limitations in Plaintiff's residual functional capacity ("RFC"). The ALJ's error is,

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

1   therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42

2   U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further

3   proceedings consistent with this Order.

4   **I.      Factual and Procedural History**

5       Plaintiff filed claims for DIB and SSI on January 7, 2019. Dkt. 10, Administrative Record

6   ("AR") 252, 275, 439, 446. Plaintiff initially alleged disability beginning on August 12, 2013,

7   but later amended her alleged onset date to June 24, 2016. AR 252, 275, 465. Her applications

8   were denied at the initial level and on reconsideration. AR 249–50, 297–98. She requested a

9   hearing before an ALJ, which took place on July 13, 2021. AR 105–44, 367–68. Plaintiff was

10  represented by counsel at the hearing. *See* AR 105.

11      The ALJ issued an unfavorable decision denying benefits on February 25, 2022. AR 61–

12  91. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

13  final decision of the Commissioner. AR 1–7. Plaintiff appealed to this Court. *See* Dkts. 1, 7.

14  **II.     Standard of Review**

15      When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

16  may set aside the denial of social security benefits if the ALJ's findings are based on legal error

17  or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

18  1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial

19  evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

20  conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting *Consol. Edison Co. v.*

21  *NLRB*, 305 U.S. 197, 229 (1938)). "We review only the reasons provided by the ALJ in the

22  disability determination and may not affirm the ALJ on a ground upon which he did not rely."

23  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

1    **III.    Discussion**

2        Plaintiff contends the ALJ erred in evaluating her testimony about the severity of her

3    symptoms, lay witness testimony from her spouse, and certain medical opinion evidence in the

4    record, resulting in an erroneous RFC. Dkt. 18 at 2.

5        A.   *Medical Opinion Evidence*

6        Plaintiff argues the ALJ erred in failing to properly evaluate medical opinion evidence

7    from Renee Eisenhower, Ph.D.; Jeremy Senske, Psy.D.; Kimberly Wheeler, Ph.D.; Dana

8    Harmon, Ph.D.; Myrna Palasi, M.D.; and Laura Raykowski, ARNP. *Id.* at 11.

9        The regulations regarding the evaluation of medical opinion evidence have been amended

10   for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of

11   Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff filed

12   her claim after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

13   Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight,

14   including controlling weight, to any medical opinion(s) or prior administrative medical

15   finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical

16   opinion or prior administrative medical finding in the record and evaluate the persuasiveness of

17   each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

18       The two most important factors affecting an ALJ's determination of persuasiveness are

19   the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a).

20   "Supportability means the extent to which a medical source supports the medical opinion by

21   explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–

22   92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1).

23   An opinion is more "supportable," and thus more persuasive, when the source provides more

24

relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion

is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the

claim.'" *Woods*, 32 F.4th 785 at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. §

416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency

factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an

examining or treating doctor's opinion as unsupported or inconsistent without providing an

explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

> 1. Renee Eisenhower, Ph.D.

At the initial level of disability review, State agency medical consultant Dr. Renee

Eisenhower provided an assessment of Plaintiff's mental RFC. *See* AR 260–61, 267–69, 283–84,

290–92. Dr. Eisenhower found Plaintiff had moderate limitations in her ability to concentrate,

persist, or maintain pace; mild limitations in her ability to understand, remember, or apply

information and to adapt or manage herself; and no limitation in interacting with others. AR 261,

283. She concluded Plaintiff would experience occasional interruptions to her workday and work

week due to her moderate limited ability to maintain attention and concentration for extended

periods but found no other significant limitations. AR 268–69, 291–92.

The ALJ assessed this opinion by comparing it with the opinion of the State agency

medical consultant at the reconsideration level of disability review, Sharon Underwood, Ph.D.

AR 76–77. The ALJ noted that both Dr. Eisenhower and Dr. Underwood "supported their

findings with a review and summary of the evidence of record." AR 77. However, the ALJ found

that Dr. Underwood "more adequately considered the objective evidence and other evidence in

1   the record as a whole, in evaluating the paragraph B criteria and in formulating the residual

2   functional capacity," and concluded that Dr. Underwood's findings were "more persuasive" than

3   those of Dr. Eisenhower. *Id.* The ALJ also found Dr. Underwood's findings to be "more

4   consistent with the objective evidence and other evidence in the record as whole, including some

5   of the findings and observations from the consultative psychological evaluator, Dr. Senske[,] as

6   well as the claimant's own statements and reporting," explaining:

> For instance, the claimant reported that she takes care of her dog, which required
> regular attention and some physical effort. The claimant also attended Grays Harbor
> Community College, both in-person and online, from 2015 to 2018 pursuing an
> Associate degree in Human Services. While the claimant testified that she last
> attended in 2017, the evidence in the record indicated that she last attended in 2018.
> The claimant also told Dr. Wheeler she had not worked since 2013, but in fact she
> regularly engaged in self-employment making candles and selling them online,
> earning a small amount every month. Some of the physical and mental abilities and
> social interactions required in order to perform these activities are the same as those
> necessary for obtaining and maintaining employment. I find the claimant's ability
> to participate in such activities diminishes the persuasiveness of the claimant's
> allegations of functional limitations. These findings provide support for the above-
> described residual functional capacity.

14   *Id.* (internal citations omitted).

15         Here, the ALJ did not provide any explicit analysis of the consistency factor for Dr.

16   Eisenhower's opinion; the decision only states that her opinion is less consistent with the

17   evidence in the record than Dr. Underwood's opinion. This is insufficient to comply with the

18   requirement that ALJs articulate "how [they] considered the supportability and consistency

19   factors for a medical source's medical opinions" when making their decisions. 20 C.F.R. §§

20   404.1520c(b)(2), 416.920c(b)(2); *see also Garrison*, 759 F.3d at 1012–13 ("[A]n ALJ errs when

21   he rejects a medical opinion . . . while doing nothing more than ignoring it, asserting without

22   explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

23   language that fails to offer a substantive basis for his conclusion."). Even if this comparative

1   approach were sufficient, the ALJ fails to explain how Plaintiff's cited activities of taking care of

2   her dog, attending community college, and making candles are inconsistent with Dr.

3   Eisenhower's opined limitations. Accordingly, the ALJ erred.

4                    2.   Jeremy Senske, Psy.D.

5          Consultative examiner Dr. Jeremy Senske completed a mental evaluation of Plaintiff on

6   July 14, 2019. AR 1039. Dr. Senske opined that Plaintiff was able to manage her own funds and

7   that her ability to interact with others and to reason and understand using memory to solve

8   problems seemed to be intact. AR 1041. However, he found her sustained concentration and

9   persistence to be poor. *Id.* He found Plaintiff's functioning was limited by post-traumatic stress

10  disorder and depression and opined her ability to engage in full-time work was moderately

11  impaired from a psychological standpoint. *Id.* Dr. Senske judged Plaintiff's prognosis to be

12  "[g]uarded due to the presence [of] ongoing symptoms, lack of treatment, lack of response to

13  treatment, as well as medical issues." *Id.*

14         The ALJ found Dr. Senske's opinion to be partially persuasive. AR 77. He found

15  persuasive Dr. Senske's opinions that Plaintiff's memory, ability to reason, and social interaction

16  were intact and "that overall she was no more than moderately psychologically impaired[.]" *Id.*

17  However, he found not persuasive the opinion that Plaintiff's sustained concentration and

18  persistence were poor. *Id.* The ALJ wrote that this opinion "was not supported by Dr. Senske's

19  findings and observations during the evaluation[:]"

20             For instance, on mental status examination, Dr. Senske noted that the claimant
              made errors in completing serial 7's and serial 3's, however, he also noted that she
21            was able to spell the word "world" forward and backward and she could follow a
              3-step command. He also noted that the claimant had no difficulty following the
22            conversation.

23  *Id.* (internal citations omitted).

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1        In his evaluation, Dr. Senske explained the errors referenced by the ALJ: "Claimant made

2  errors in completing serial 7's. She stated '100' and discontinued. She also made errors in serial

3  3's, stating '100, 97, 94' and discontinuing." AR 1041. This evidence appears to support Dr.

4  Senske's conclusion that Plaintiff's concentration, persistence, and pace were poor. Even if the

5  other findings referenced by the ALJ do not support Dr. Senske's opinion, the ALJ does not

6  explain why he accepted some of these findings and rejected others. Although the ALJ is

7  responsible for resolving conflicts and ambiguities in medical evidence, *see Ford v. Saul*, 950

8  F.3d 1141, 1149 (9th Cir. 2020), the concurrent duty to set forth his reasoning in a way that

9  allows for meaningful review requires "build[ing] an accurate and logical bridge from the

10  evidence to [the ALJ's] conclusions[.]" *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.

11  2003). The ALJ did not do so here.

12        The ALJ also found that Dr. Senske's opinion was inconsistent with the objective

13  evidence in the record. AR 78. He pointed out that Plaintiff denied any past or present drug use

14  in her interview with Dr. Senske, but medical evidence from both before and after that evaluation

15  documented daily marijuana use for pain management. *Id.* (citing AR 982, 1040, 1084, 1382).

16        In support of this inconsistency finding, the ALJ cited to the mental evaluations of Dr.

17  Kimberly Wheeler and Dr. Dana Harmon, both of whom took Plaintiff's marijuana use into

18  account when formulating their opinions. AR 78, 1084, 1098. Dr. Wheeler diagnosed Plaintiff

19  with severe cannabis use disorder, noting that her marijuana use "may be contributory to nausea

20  and lethargy," and recommended an "assessment to clarify." AR 1082–83. Like Dr. Senske, Dr.

21  Wheeler found that Plaintiff had marked limitations in her ability to understand, remember, and

22  persist in tasks by following detailed instructions. AR 1083. However, despite diagnosing

23  Plaintiff with cannabis use disorder, Dr. Wheeler found the limitations on Plaintiff's basic work

24

1  activities were not primarily the result of a substance use disorder and would persist following 60

2  days of sobriety. *Id.*

3        Dr. Harmon reviewed Dr. Wheeler's report and certain additional medical records. AR

4  1086. She determined Dr. Wheeler's assessment of Plaintiff's severity and functional limitations

5  to be partially supported by the available medical evidence, noting that "[t]he severity rating that

6  Dr. Wheeler provides seems realistic, but it also appears that Jamie is actively drug-involved."

7  AR 1098. In response to the question of whether Plaintiff was primarily impaired due to

8  substance use, Dr. Harmon checked the box for "no," but further explained: "This is unclear.

9  Jamie is taking fairly high levels of narcotic pain medications, along with 'heavy use' of

10  marijuana. Jamie's drug use may be impacting her mental health, mental clarity, and ability to

11  function." *Id.*

12        Despite Dr. Senske's apparent ignorance of Plaintiff's marijuana use, the part of his

13  opinion that the ALJ found not persuasive—that Plaintiff's sustained concentration and

14  persistence were poor—is not inconsistent with Dr. Wheeler's opinion that Plaintiff had marked

15  limitations in her ability to understand, remember, and persist in tasks by following detailed

16  instructions. Dr. Harmon's opinion provides only a speculative suggestion of a relationship

17  between any functional limitations and Plaintiff's marijuana and narcotic use. Accordingly,

18  substantial evidence does not support the ALJ's finding that these opinions are inconsistent with

19  Dr. Senske's opinion.

20        The ALJ further explained his rationale for discounting Dr. Senske's opinion, stating:

21        I find that the claimant's earlier failure to disclose her heavy cannabis use to a
        psychological evaluator during an evaluation for purposes of disability benefits

22        undermines both her persuasiveness and the persuasiveness of Dr. Senske's
        opinions. It is quite possible Dr. Senske would have had a different opinion about

23        the claimant's "sustained concentration and persistence" had he known the extent

24

of her cannabis use. This undermines his opinion on that issue, and it is therefore unpersuasive.

AR 78. The ALJ does not cite to any evidence in the record supporting his assertion that Plaintiff's marijuana use may have affected this area of Dr. Senske's assessment but not his other findings, which the ALJ accepted. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is "not qualified as a medical expert" and may not go outside the record to assess a claimant's condition).

Finally, the ALJ notes that "Dr. Senske's opinion that the claimant's prognosis was 'guarded' was based in part on 'lack of treatment.' At the time of this evaluation, the claimant was not engaged in therapy that could have been beneficial to her." AR 78 (internal citation omitted). The ALJ does not explain the relevance of this statement to his persuasiveness assessment. Because he failed to articulate sufficient reasons for rejecting Dr. Senske's opinion, the ALJ erred.

3.   Kimberly Wheeler, Ph.D.

Dr. Kimberly Wheeler performed psychological evaluations of Plaintiff on June 25, 2020, and May 4, 2021. AR 1081, 1291. Dr. Wheeler conducted both evaluations over the phone due to COVID-19 precautions. AR 1084, 1294. Dr. Wheeler described the circumstances of the first interview in her evaluation:

> At first [Plaintiff] said she had privacy for the call, then admitted she was in the car with husband and [mother-in-law], distracted by them as they arrived at restaurant—she chose to accept lunch date at the time of this appointment. Once they went inside, at examiner's prompt, she was a bit more focused, but overall impression is she wasn't fully invested in making her concerns known, only doing what was required of her.

1 | AR 1084. In the mental status exam, Dr. Wheeler noted her observations that Plaintiff was

2 | "distracted by car occupants, butterfly that landed on her, . . . and people walking by her car,

3 | calling out to say hi." *Id.*

4 |        Dr. Wheeler diagnosed Plaintiff with adjustment disorder with mixed anxiety and

5 | depressed mood as well as severe cannabis use disorder. AR 1082. She found marked limitations

6 | in Plaintiff's ability to understand, remember, and persist in tasks by following detailed

7 | instructions and in her ability to perform activities within a schedule, maintain regular

8 | attendance, and be punctual within customary tolerances without special supervision. AR 1083.

9 | Dr. Wheeler found Plaintiff's overall severity rating based on the combined impact of all

10 | diagnosed mental impairments to be moderate. *Id.*

11 |        In the second evaluation, Dr. Wheeler wrote Plaintiff's cannabis use was "[s]ignificantly

12 | less than last year, no longer of concern," and diagnosed Plaintiff with generalized anxiety. AR

13 | 1292. Dr. Wheeler again found a marked limitation in Plaintiff's ability to perform activities

14 | within a schedule, maintain regular attendance, and be punctual within customary tolerances

15 | without special supervision but found only a moderate limitation in Plaintiff's ability to

16 | understand, remember, and persist in tasks by following detailed instructions. AR 1292–93.

17 | However, she assessed a marked limitation in Plaintiff's ability to set realistic goals and plan

18 | independently, which she had previously found only moderately limited. AR 1083, 1293. She

19 | again found the overall impact on Plaintiff's functioning to be moderate. AR 1293.

20 |        The ALJ found Dr. Wheeler's opinions not persuasive. AR 78. He found the opinions

21 | were not supported, writing that "Dr. Wheeler had very little documentary information,

22 | consisting of only some case notes listing the claimant's allegations, including in the second

23 | evaluation where she only had her previous evaluation to review," and determining that "[a]ny

24 |

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1  advantage Dr. Wheeler may have normally had due to being able to personally interview the

2  claimant in the first evaluation was negated by the circumstances of the clinical interview." AR

3  78–79.

4      The ALJ also wrote that Dr. Wheeler's findings were "not consistent with the objective

5  evidence and other evidence in the record as a whole, including the claimant's own statements

6  and reporting." AR 79. The ALJ then cited multiple examples of discrepancies between the

7  information that Plaintiff provided to Dr. Wheeler and information documented elsewhere in the

8  record. *Id.* He even notes that Plaintiff provided Dr. Wheeler with varying information over the

9  course of the interview, giving the example that she initially claimed to be alone when she was

10 not. *Id.*

11     Although the ALJ frames this discussion as analysis of the consistency factor, the

12 decision contains very little discussion of how *Dr. Wheeler's opinions* are inconsistent with the

13 other evidence in the record. The ALJ noted that "even though she opined that the claimant's

14 cannabis use 'may be contributory to nausea and lethargy' and that she needed a representative

15 payee due to 'heavy cannabis use,' and recommended an assessment of drug use, she did not find

16 any connection between the claimant's substance use and her alleged persistence limitations."

17 AR 80. The ALJ did not cite to any medical evidence impugning Dr. Wheeler's conclusion, but

18 only referenced Dr. Harmon's review:

19     A reviewing psychologist more appropriately noted: 'Jamie is taking fairly high
       levels of narcotic pain medications, along with "heavy use" of marijuana. Jamie's
20     drug use may be impacting her mental health, mental clarity, and ability to
       function.' Dr. Wheeler did not know that, and did not consider that in the
21     evaluation.

22 *Id.* (internal citation omitted). As referenced above, this speculative statement about the potential

23 impacts of drug use does not constitute substantial evidence of inconsistency. Also, the ALJ

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

1   appears to believe that Dr. Wheeler did not know about or consider Plaintiff's use of narcotic

2   pain medications, but Dr. Wheeler's evaluation includes Plaintiff's report that she was taking

3   oxycodone, among other medications. AR 1081.

4         In sum, the ALJ's evaluation of Dr. Wheeler's opinion evidence does not sufficiently

5   articulate how he considered the supportability and consistency factors in determining the

6   persuasiveness of the opinions. Rather, the ALJ's determination appears to be based largely on

7   his skepticism of Plaintiff's reliability and assumptions about the effects of marijuana that are not

8   supported in the record. This was error.

9                 4.   Harmless Error

10        "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

11   674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

12   Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

13   the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

14   1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an

15   error is harmless requires a "case-specific application of judgment" by the reviewing court, based

16   on an examination of the record made "without regard to errors that do not affect the parties'

17   substantial rights." *Molina*, 674 F.3d at 1118–19 (cleaned up).

18         Had the ALJ properly considered the opinions of Drs. Eisenhower, Senske, and Wheeler,

19   he may have included additional limitations in the RFC. The ultimate disability determination

20   may change if the opined limitations are included in the RFC and considered throughout the

21

22

23

24

1  remaining steps of the sequential evaluation process. Accordingly, the ALJ's error is not

2  harmless and requires reversal.[2]

3          B. *Subjective Symptom Testimony*

4          Plaintiff contends the ALJ failed to give specific, clear, and convincing reasons for

5  rejecting Plaintiff's testimony about her symptoms and limitations. Dkt. 18 at 12. As noted

6  above, the Court concludes the ALJ committed harmful error in assessing the medical opinion

7  evidence. Because of this error, the ALJ must re-evaluate all the medical evidence on remand.

8  Because Plaintiff may be able to present new evidence and new testimony on remand and the

9  ALJ's reconsideration of the medical evidence may impact the assessment of Plaintiff's

10  testimony, the ALJ must reconsider Plaintiff's testimony on remand.

11          C. *Lay Witness Testimony*

12          Finally, Plaintiff contends the ALJ erred in failing to properly evaluate lay witness

13  testimony from Plaintiff's spouse. Dkt. 18 at 17–18.

14          Under the revised regulations, ALJs are "not required to articulate" how they evaluate

15  evidence from nonmedical sources using the same factors applicable to medical opinion

16  evidence. 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit has not yet clarified

17  whether an ALJ is still required to provide "germane reasons" for discounting lay witness

18  testimony. *See Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20,

19  2023).[3] Other relevant regulations indicate that ALJs will consider evidence from nonmedical

20  _____

21      [2] As the Court finds harmful error in the ALJ's consideration of these opinions, it need not consider
whether the ALJ harmfully erred in assessing the other challenged opinions. However, all medical opinion evidence

22  should be re-evaluated on remand.
    [3] Defendant relies on *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022),

23  to support its position that the ALJ did not need to articulate any reasons for discounting the lay witness evidence in
his decision. *See* Dkt. 21 at 7. In a footnote in *Fryer*, the Ninth Circuit stated, "It is an open question whether ALJs
are still required to consider lay witness evidence under the revised regulations, although it is clear they are no

24  longer required to articulate it in their decisions." 2022 WL 17958630, at *3 n.1. Courts have interpreted the

1    sources when evaluating a claim of disability. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1),

2    404.1545(a)(3), 416.929(c)(1), 416.945(a)(3). And an ALJ may not reject "significant probative

3    evidence" without explanation. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

4    1984).

5          The Court has directed the ALJ to reassess the medical opinion evidence on remand. As

6    Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's

7    reconsideration of the medical evidence may impact the assessment of the lay witness opinion,

8    the ALJ shall also reconsider the testimony from Plaintiff's spouse on remand.

9          D.   *Remaining Steps of the Administrative Process*

10         Plaintiff maintains the RFC, Step Four, and Step Five findings are not supported by

11   substantial evidence. Dkt. 18 at 18–19. The Court has found the ALJ committed harmful error

12   and has directed the ALJ to reassess the medical evidence, Plaintiff's subjective symptom

13   testimony, and the lay witness testimony. Accordingly, on remand, the ALJ is instructed to re-

14   evaluate the entire sequential evaluation process, as well as the additional evidence submitted to

15   the Appeals Council. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must

16   always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec.*

17   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's

18   limitations is defective"); *Watson v. Astrue*, No. ED CV 09-1447-PLA, 2010 WL 4269545, at *5

19

20   _____

21   statement in *Fryer* to mean only that the ALJ is not required to articulate how the ALJ considered the lay witness
     evidence using the requirements in 20 C.F.R. §§ 404.1520c and 416.920c. *See Megan Ann D. v. Comm'r of Soc.*

22   *Sec.*, No.: 1:23-cv-00027-REP, 2024 WL 1308928, at *5 (D. Idaho Mar. 27, 2024. Furthermore, in *Fryer*, the Ninth
     Circuit cited *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022). *Johnson* does not hold that the
     ALJ is no longer required to articulate their decision regarding lay witness testimony. Rather, *Johnson* declined to

23   decide the issue. 2022 WL 3998572, at *2. Additionally, *Stephens*, which was decided after *Fryer*, states the Ninth
     Circuit has not yet addressed whether the ALJ is still required to provide germane reasons for discounting lay

24   witnesses under the new regulations. *Stephens*, 2023 WL 6937296 at *2. Therefore, the Court is not persuaded by
     Defendant's argument.

1 | (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational

2 | expert defective when the ALJ did not properly consider two physicians' findings).

3 | **IV.    Conclusion**

4 |       Based on the foregoing reasons, the Court hereby finds that the ALJ improperly

5 | concluded Plaintiff was not disabled beginning June 24, 2016. Accordingly, Defendant's

6 | decision to deny benefits is reversed and this matter is remanded for further administrative

7 | proceedings in accordance with the findings in this Order.

8 |       Dated this 3rd day of May, 2024.

9 |

10 | David W. Christel
United States Magistrate Judge